UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DARLENE COLANDREA,

                    Plaintiff,

        -against-                                    1:15-CV-0456 (LEK/ATB)

HUNTER-TANNERSVILLE CENTRAL
SCHOOL DISTRICT, *et al.*,

                    Defendants.
_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Darlene Colandrea commenced the present action against Defendants Hunter-Tannersville Central School District ("HTCSD") and Patrick Darfler-Sweeney alleging discrimination and unlawful retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* Dkt. No. 1 ("Complaint"). Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. Nos. 23 ("Motion"), 23-2 ("Defendants' Memorandum"), 23-3 ("Defendants' Statement of Material Facts"); see also Dkt. Nos. 31 ("Opposition"), 32 ("Plaintiff's Statement of Material Facts"), 33 ("Plaintiff's Statement of Material Facts Response").  For the following reasons, Defendants' Motion is denied.

## II.   BACKGROUND

Colandrea has been employed as a teacher by HTCSD since approximately September 1981, and she is fifty-nine years old. Dkt. No. 34 ("Colandrea Affidavit") ¶¶ 3–4. Colandrea teaches prekindergarten and, until 2014, had uniformly received exemplary performance reviews.

Id. ¶¶ 5, 7–8. In 2014, Colandrea became the first teacher in her district to receive the New York State Elementary Classroom Teachers Association ("NYSECTA") Pre-K Teacher of the Year Award. Id. ¶ 35. Throughout her time at HTCSD, Colandrea participated in various after-school, mentoring, and professional development programs. Id. ¶ 10. She also worked as a summer school teacher and spent ten years as the coordinator of the summer school program. Id. ¶ 39.

In fall 2013, HTCSD established the Community Rural Opportunities Program ("CROP"), which runs throughout the school year and the summer. Dkt. No. 23-1 ("Lynch Affirmation") ¶ 20. CROP has two different types of employees: a Site Coordinator, who runs the program, and Activity Leaders, who are supervised by the Site Coordinator. Id. ¶ 22. Colandrea applied to be the Site Coordinator for the 2013–2014 school year, and she was appointed to the position despite objections from Sweeney, who was the District Superintendent until retiring on June 30, 2016. Colandrea Aff. ¶¶ 12, 65. Although Sweeney eventually recommended Colandrea for the position, he did so only under the direction of the Board of Education (the "Board"). Dkt. No. 24-1 ("Sweeney Deposition") at 52:14–53:8. Until May 2014, Colandrea received excellent evaluations for her work as Site Coordinator during the 2013–2014 school year. Colandrea Aff. ¶ 37.[1]

On May 10, 2014, while she was Site Coordinator, Colandrea led a field trip to the Bronx Zoo for children in kindergarten through seventh grade. Id. ¶ 13; Lynch Affirm. ¶ 25. Afterward,

---

[1] In Colandrea's affidavit, she asserts that she received excellent evaluations for her work as Site Coordinator. Colandrea Aff. ¶ 37. Colandrea also submitted an exhibit entitled "CROP Evaluations April 2013," but the evaluations do not mention Colandrea or CROP. Dkt. No. 30-6 ("Colandrea Aff. Ex. 6"). Furthermore, it is not clear how there could be any reviews of Colandrea's work as Site Coordinator in April 2013 if CROP was not established until fall 2013. Lynch Affirm. ¶ 20.

two of the parents who attended the trip wrote letters complaining about their experience. Colandrea Aff. ¶ 14. They complained that the school buses were too slow, the trip ended late, and the teachers were texting each other. Id. Colandrea responds that the complaints were unreasonable because the bus may not travel faster than fifty-five miles per hour, the trip ended late because the bus made an emergency stop to bring a child to the bathroom, and the teachers were texting each other to keep track of the children, as various parents were violating policy by leaving early with their children. Id. ¶¶ 14–15. Furthermore, Colandrea was not reprimanded after the trip, and she claims that Sweeney "did not blame [her] or the teachers, but rather the parent chaperones for the chaos." Id. ¶ 16. Sweeney wrote an email to the complaining parents and informed them that he was changing CROP's policy so that parents could no longer serve as chaperones, and that parents would need to sign their children out directly with Colandrea in the future. Sweeney Dep. Ex. 28.

The following month, Colandrea was involved in an incident at the school cafeteria with a student's parent, though not during a CROP event. Pl.'s SMF Resp. ¶ 23. On June 17, 2014, Colandrea reprimanded a student for throwing a "super ball" near glass punch bowls and glass picture frames, while the child's parent, Jessika McKinnie, was in the cafeteria. Colandrea Aff. ¶¶ 26–27. McKinnie said that Colandrea had no right to discipline her child while McKinnie was present. Id. Colandrea responded by telling McKinnie that "if she was the parent, then she should go be the parent, as her child [was] crying." Id. ¶ 28. Both McKinnie and Colandrea raised their voices. Dkt. No. 24 ("Colandrea Deposition") at 36:23–37:1. Defendants claim that Colandrea "was screaming at [McKinnie] and said that [McKinnie] was not a good mother, or words to that effect," Lynch Affirm. ¶ 28, but both McKinnie and Colandrea deny this claim, Colandrea Aff. ¶

29; Dkt. No. 30-3 ("McKinnie Affidavit") ¶ 10. McKinnie also states that she never discussed the incident with Sweeney. McKinnie Aff. ¶¶ 12–15.

The following day, Colandrea received an email from Sweeney stating that he would not recommend her for reappointment as Site Coordinator for the 2014 summer program. Dkt. No. 30-5 ("Sweeney CROP Email"). Sweeney provided no explanation for his decision, id., and the following day he recommended that the position be given to Rosie Iacono, who was less qualified than Colandrea but approximately four years younger, Colandrea Aff. ¶ 37.[2] Over the summer of 2014, Colandrea also applied multiple times to be an Activity Leader, but her applications were denied. Id. ¶¶ 44, 57. Instead, a teacher's aide, who was younger and less qualified than Colandrea, was hired for the position. Id. ¶ 45. According to Defendants, Colandrea was not hired for the CROP positions because of the problems with the trip to the Bronx Zoo and because of the incident with McKinnie. Lynch Affirm. ¶ 32. Colandrea disagrees and notes that a younger teacher, Tina Schlegal, had a similar incident with McKinnie on October 29, 2015, but Schlegal never received a counseling memorandum and continued working as an Activity Leader. Colandrea Aff. ¶ 61. Colandrea claims that the real reason she was not rehired as Site Coordinator is that Defendants wanted her to retire from teaching, but she refused to do so. Id. ¶ 37.

Colandrea is one of the oldest teachers in her school district and is the oldest teacher at her school. Id. ¶ 6. She is also a member of the district's teachers' union and is covered by a collective bargaining agreement ("CBA") between HTCSD and the teachers' union. Defs.' SMF

---

[2] Despite Colandrea's repeated assertion that she is approximately five years older than Iacono, Colandrea Aff. ¶ 38; Opp'n at 18, she is actually slightly less than four years older, Defs.' SMF ¶¶ 2, 30.

¶ 4. The CBA contains a provision for an early retirement incentive that amounted to $41,000 for Colandrea. Id. ¶ 6; Dkt. No. 30-7 ("Murin Affidavit") ¶ 4. Once a teacher becomes eligible for the early retirement incentive, the CBA provides a window in which eligible teachers may elect to take the incentive, but teachers must submit a written application to the District Superintendent at least 120 days prior to the last day of their employment. Defs.' SMF ¶¶ 6–7. Teachers may also apply to extend the window of eligibility for the retirement incentive on a year-to-year basis, but such applications must be made six months before the expiration of the eligibility window. Id. ¶ 8. The District Superintendent must recommend a teacher to the Board, Sweeney Dep. Ex. 15B at 1, and the final decision on an extension request is made by a vote of the Board, Defs.' SMF ¶ 10.

Colandrea's eligibility window for the retirement incentive closed in June 2014, Lynch Affirm. ¶ 11, and she timely applied for an extension on December 13, 2013, Colandrea Aff. ¶ 18. Colandrea applied for the extension in part because her daughter has a life-long disability, and Colandrea knew that issues surrounding her daughter's disability insurance would not be resolved until after July 1, 2014. Id. ¶ 24. When Colandrea raised the issue with Sweeney, he told her that she should retire because she would make more money, and he said that he would not bring her extension request to the Board for a vote. Id. ¶ 18. After discovering that her request for an extension had been placed on the Board's meeting agenda, Colandrea reached out to the individual members of the Board to inform them of her daughter's health insurance situation. Id. ¶ 19. The Board ultimately denied Colandrea's extension request in a 5–0 vote. Defs.' SMF ¶ 14.

On May 8, 2014, Colandrea received a counseling memorandum from Sweeney reprimanding her for reaching out to individual members of the Board "in clear violation of state education law and procedural process." Sweeney Dep. Ex. 15A at 1. Sweeney went on to state that Colandrea had shown a "pattern of defiance of authority and rude/disrespectful behavior." Id. Colandrea responded that this was the first negative letter she had received in her personnel file in thirty-three years of teaching, and that she was not negotiating with the Board; she was only informing them of her daughter's health insurance situation, which Sweeney had failed to do on her behalf. Sweeney Dep. Ex. 15B at 1.

Despite the Board's vote and Sweeney's May 2014 counseling memorandum, Sweeney gave Colandrea several more opportunities to accept the retirement incentive without the normal requirement of 120 days' written notice. Defs.' SMF ¶ 15. In fact, Colandrea and Sweeney met four times between June 20, 2014, and July 1, 2014, to discuss the retirement incentive. Colandrea Aff. ¶ 40. Ultimately, Colandrea rejected the early retirement incentive, and she continues to be employed as a teacher by HTCSD. Lynch Affirm. ¶¶ 18–19. Although Defendants claim that Colandrea was never pressured to retire, id. ¶ 16, Colandrea tells a different story, Colandrea Aff. ¶¶ 40–43; Colandrea Dep. 15:16–15:20.

Colandrea claims that Sweeney took several steps to coerce her into retiring. Colandrea Aff. ¶¶ 18, 37. First, on June 18, 2014, Sweeney informed Colandrea that he would not recommend her for the Site Coordinator position. Id. ¶ 32. As a result, Colandrea claims to have lost a significant amount of potential income and pension benefits. Id. ¶¶ 46–47. Indeed, Colandrea claims that—assuming she would have worked five more years as Site Coordinator before retiring, and that she would have lived for thirty years after retiring—she lost $100,000 in

potential income, and she lost an additional $400,000 from her pension. Id. Second, Sweeney

rejected Colandrea's June 22, 2014 application to work as an Activity Leader in the CROP

program. Id. ¶ 44. Third, in a June 30, 2014 meeting, Sweeney informed Colandrea that she

would not be considered for any extra paid work assignments that were not guaranteed by her

contract during the upcoming school year. Id. ¶ 52. Finally, Sweeney did not publicly recognize

Colandrea for receiving the NYSECTA Pre-K Teacher of the Year award, and he prematurely

removed the announcement from the elementary school billboard. Id. ¶ 35.

  After her applications for the Site Coordinator and Activity Leader positions were

rejected, Colandrea filed a complaint with the Equal Employment Opportunity Commission

("EEOC") and the New York State Division of Human Rights ("NYSDHR") on July 8, 2014. Id.

¶¶ 33, 44, 55. Defendants were notified of the complaint sometime in August 2014, and

Colandrea claims that Sweeney retaliated against her for filing those complaints. Id. First,

Colandrea submitted additional applications for the CROP positions in July and August 2014,

which were also rejected. Id. ¶ 57. Second, Colandrea was not asked to mentor any new staff

members. Opp'n at 22–23. Third, on September 9, 2014, Colandrea received a counseling

memorandum from Sweeney reprimanding her for her behavior during the June 17, 2014 incident

with McKinnie. Sweeney Dep. Ex. 16A. Colandrea claims that the timing of the counseling

memorandum—which she received months after the incident, but just weeks after the school

learned of her age discrimination complaint—shows that it was retaliatory. Colandrea Aff. ¶ 55.

Defendants, on the other hand, claim that the counseling memorandum was not retaliation; the

memorandum was delayed only because the incident occurred just before summer break. Lynch

Affirm. ¶¶ 29–30.

On April 14, 2015, Colandrea filed the Complaint in this action, alleging that Defendants discriminated and retaliated against her in violation of the ADEA and NYSHRL. On July 14, 2016, Defendants filed the Motion for Summary Judgement. Colandrea submitted an opposition, but Defendants did not file a reply.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

Colandrea brings claims of discrimination and retaliation against both HTCSD and Sweeney under the ADEA and the NYSHRL. Compl. ¶ 1. Claims under the NYSHRL and the ADEA are analyzed under the same standard: the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Robles v. Cox & Co., 987 F. Supp. 2d 199, 205–06 (E.D.N.Y. 2013); see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001) ("Although there are differences between the State HRL . . . and the [ADEA], age discrimination suits brought under the State HRL . . . are subject to the same analysis as claims brought under the ADEA.").

### A.  Discrimination

Under the McDonnell Douglas framework, a plaintiff alleging age discrimination must first make out a prima facie case by showing that: (1) she was over the age of forty, (2) she was qualified for the position in question, (3) she suffered an adverse employment action, and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137–38 (2d Cir. 2003). "A plaintiff's burden of establishing a prima

facie case is de minimis." Abdu-Brisson, 239 F.3d at 467. If the plaintiff meets this minimal burden, the employer must offer a "clear and specific" nondiscriminatory reason for the adverse employment action. Meiri v. Dacon, 759 F.2d 989, 996–97 (2d Cir. 1985). Once such a reason is provided, the plaintiff can no longer rely on her prima facie case but may still prevail if she can show that the employer's determination was in fact the result of discrimination. Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). "'[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (quoting Gross v. FBL Fin. Servs., 557 U.S. 167, 180 (2009)).

### 1. *Prima Facie Case*

Colandrea clearly satisfies the first element of a prima facie case, as she was born on June 2, 1957, and was over the age of forty during the time period in question. Defs.' SMF ¶ 2. Second, Defendants do not dispute that Colandrea was qualified for the positions of Site Coordinator and Activity Leader. Colandrea had been a teacher for over thirty years, she had significant experience supervising extracurricular activities, and she spent ten years as the coordinator of the summer school program. Colandrea Aff. ¶¶ 10, 39.

As for the third element of a prima facie case, Defendants argue that Colandrea did not suffer an adverse employment action. Defs.' Mem. at 9. Specifically, Defendants argue that Colandrea continues to teach at HTCSD and was merely offered an incentive to retire, which cannot qualify as an adverse action. Id. Defendants may be correct that the offer of the retirement incentive was not an adverse employment action, see Auerbach v. Bd. of Educ. of the

Haborfields Cent. Sch. Dist. of Greenlawn, 136 F.3d 104, 113 (2d Cir. 1998) (describing the factors courts should consider when determining whether a retirement incentive complies with the ADEA), but Colandrea does not claim that the offer of the retirement incentive itself violated the ADEA, Opp'n at 14. As alleged in the Complaint, and reiterated in the Opposition, Colandrea suffered adverse employment actions when she was not rehired as Site Coordinator, when she was not hired as Activity Leader, and when she was refused any additional paid work. Compl. ¶¶ 25, 31, 33, 35; Opp'n at 15–16.

In the Second Circuit, "a plaintiff may suffer an adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.'" Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999) (quoting Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997)), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or alteration of job responsibilities.'" Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Crady v. Liberty Nat'l Bank & Tr. Co., 993 F2d 132, 136 (7th Cir. 1993)). Examples of materially adverse changes include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices." Id.

The decision not to rehire Colandrea as Site Coordinator, as well as the decisions not to hire her as an Activity Leader or offer her any additional paid work, had materially adverse consequences on the terms and conditions of Colandrea's employment. See Hrisinko v. N.Y.C. Dep't of Educ., 369 F. App'x 232, 234 (2d Cir. 2010) ("The ADEA prohibits employers from

refusing to hire, discharging, or otherwise discriminating against an employee with regard to compensation, terms, conditions or privileges of employment because of age."); Herling v. N.Y.C. Dep't of Educ., No. 13-CV-5287, 2014 WL 1621966, at *6 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may also constitute an adverse employment action.").  Therefore, the Court is satisfied that there is an issue of fact as to whether Defendants' decisions not to hire Colandrea as Site Coordinator, Activity Leader, or for any other paid work constitute adverse employment actions.

Fourth, Defendants make two arguments as to why Colandrea has failed to show that any adverse employment action occurred under circumstances giving rise to an inference of discrimination: (1) the teacher hired to replace Colandrea was less than four years younger than her, and (2) courts have been reluctant to find discrimination where the person who made the decision to fire is the same person who made the decision to hire. Defs.' Mem. at 11.

There is no bright line rule as to the size of an age discrepancy that is required to support an inference of discrimination, Holowecki v. Fed. Exp. Corp., 644 F. Supp. 2d 338, 357 (S.D.N.Y. 2009), but it is well established that an inference of age discrimination "cannot be drawn from the replacement of one worker with another insignificantly younger," O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996). Courts in this circuit have found an age discrepancy of less than three years to be insignificant, Jaworski v. Westplex Corp., 49 F. Supp. 2d 151, 159 (W.D.N.Y. 1998), and a discrepancy of eight years to be "not insignificant," Tarshis v. Riese Org., 211 F.3d 30, 38–39 (2d Cir. 2000).

In this case, the fact that Colandrea's replacement was less than four years younger may, on its own, be insufficient to establish an inference of age discrimination. But even an insignificant discrepancy does not prevent a plaintiff from making a prima facie showing of age discrimination. See O'Connor, 517 U.S. at 312 ("That one member of the protected class lost out to another member is irrelevant, so long as he lost out *because of his age*."). Where the age discrepancy alone is insufficient to establish an inference of discrimination, it may still—in combination with other factors—support an inference of discrimination. Molin v. Permafiber Corp., No. 01-CV-9279, 2002 WL 31760215, at *4 (S.D.N.Y. Dec. 9, 2002); see also Nembhard v. Mem'l Sloan Kettering Cancer Ctr., No. 96-7406, 1996 WL 680756, at *4 (2d Cir. Nov. 22, 1996) (finding that a jury could infer age discrimination where the plaintiff was replaced by someone only a year younger because her superior made discriminatory comments).

Defendants' second argument is that Sweeney hired Colandrea for the Site Coordinator position just one year before the alleged discrimination, which undermines any inference of discrimination. Defs.' Mem. at 11. Courts have recognized this "same-actor inference" and found that "[w]hen the same actor hires a person within the protected class, and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" Carlton v. Mystic Trans., Inc., 202 F.3d 129, 138 (2d Cir. 2000) (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)). But the same-actor inference should not be considered in relation to the prima facie case. Tarshis, 211 F.3d at 38–39 (citing Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991)). Instead, it should be considered at the third stage of the McDonnell Douglas burden-shifting framework because "it creates a strong

inference that the employer's stated reason for acting against the employee is not pretextual." Proud, 945 F.2d at 798.

Bearing in mind that a plaintiff's burden of establishing a prima facie case is de minimis, Colandrea has met that burden and shown that the adverse actions occurred under circumstances giving rise to an inference of discrimination. Colandrea was the oldest teacher at her school, and she was replaced as Site Coordinator by another teacher who, although less than four years younger, was less qualified. Colandrea Aff. ¶ 39. The teacher who was hired as Activity Leader was also younger and less qualified than Colandrea. Id. ¶ 45. Sweeney also denied Colandrea any extra paid assignments, but he allowed her do to extra assignments on a volunteer basis. Id. ¶ 56. All of these employment actions took place soon before and after Colandrea declined the retirement incentive, which she claims Sweeney pressured her to her to accept. Id. ¶¶ 18, 37.

### 2. Legitimate, Nondiscriminatory Reason

A defendant's burden of providing a legitimate, nondiscriminatory reason for the adverse employment action "is not a particularly steep hurdle." Hyek v. Field Support Servs., 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010). "Any stated reason is sufficient; the employer need not persuade the court that the proffered reason was the actual reason for its decision." Tarshis, 211 F.3d at 36. "If the employer makes this showing, the presumption of discrimination raised by plaintiff establishing his prima facie case drops out, and the burden shifts back to plaintiff to prove that discrimination was the real reason for the employment action." Id.

Here, Defendants claim to have three legitimate, nondiscriminatory reasons for any adverse employment actions taken against Colandrea: (1) the June 17, 2014 incident in the cafeteria involving McKinnie, (2) the problems with the field trip to the Bronx zoo, and (3) the

May 8, 2014 counseling memorandum that Colandrea received for "insubordinate and insolent behavior." Defs.' Mem. at 12–13. Therefore, the burden shifts back to Colandrea to establish that age discrimination was the real reason she was not rehired as Site Coordinator, hired as Activity Leader, or hired for any other paid work assignments outside of those guaranteed in her contract.

### 3. Pretext for Unlawful Discrimination

Once an employer has provided a nondiscriminatory reason for the challenged employment action, the plaintiff may still prevail if she can show that the action was in fact the result of discrimination. "'[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." Gorzynski, 596 F.3d at 106 (quoting Gross, 557 U.S. at 180). Therefore, Colandrea must provide sufficient evidence to enable a reasonable jury to conclude by a preponderance of the evidence that age was a "but-for" cause of the adverse employment actions.

To show that an employer's reasons are pretextual and that age motivated the adverse action in the summary judgement context, the plaintiff must raise an "issue of material fact as to whether (1) the employer's asserted reason for [the adverse action] is false or unworthy of belief, and (2) more likely than not the employee's age was the real reason for the [adverse action]." Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 108–09 (2d Cir. 1994)). Defendants point to three supposedly legitimate, nondiscriminatory reasons for the challenged employment actions, and Colandrea attempts to show that those reasons are pretextual and that age discrimination motivated Defendants' actions.

First, Defendants dedicate the majority of their argument to the June 17, 2014 incident in the cafeteria involving Colandrea and McKinnie. Defs.' Mem. at 12–13. The day after the incident, Colandrea received an email from Sweeney informing her that he had "removed [his] recommendation for [her] to be appointed as site coordinator for the 2014 summer crop program." Sweeney Dep. Ex. 7. He did not explain his decision but offered to meet with Colandrea to address any questions. Id. Defendants argue that the temporal proximity between the incident in the cafeteria and Sweeney's email shows that the incident was the actual reason for the decision not to rehire Colandrea as Site Coordinator. Defs.' Mem. at 12.

But according to Colandrea, Sweeney's quick response is actually evidence that the incident was used as a pretext for age discrimination. Opp'n at 20–21. In making his decision less than twenty-four hours after the incident, Sweeney failed to discuss the incident with McKinnie or conduct an appropriate investigation. Id. at 21. And in his haste, Sweeney may have come to an inaccurate understanding of the incident. Sweeney claimed in the counseling memorandum formally disciplining Colandrea for the incident, Sweeney Dep. Ex. 16A, and in his deposition, id. at 90:19–91:23, that Colandrea called McKinnie a bad parent. Colandrea and McKinnie, on the other hand, both maintain that Colandrea never said such a thing. Colandrea Aff. ¶ 29; McKinnie Aff. ¶ 10. McKinnie even goes so far as to say that she would have called the police if Colandrea had called her a bad parent. McKinnie Aff. ¶ 10. As further evidence that the cafeteria incident was pretext, Colandrea points out that another teacher, Tina Schlegal, was involved in a similar incident with McKinnie, but that teacher was not formally reprimanded and did not lose her position as a CROP Activity Leader. Colandrea Aff. ¶ 61. Schlegal is eight years younger than Colandrea. Id. ¶ 62.

Second, Defendants suggest that the problems with the May 10, 2014 field trip to the Bronx Zoo provide another legitimate, nondiscriminatory reason for the employment actions. Defs.' Mem. at 13. But Defendants provide no details as to what went wrong on the trip, or how the trip impacted their hiring decisions. Defendants merely state that, after the trip, they received letters with complaints from parents, Defs.' SMF ¶ 22, and that Colandrea herself admitted it was not a good trip, Defs.' Mem. at 13. Colandrea, on the other hand, provides a detailed account of the trip to the Bronx Zoo and the subsequent complaints. Colandrea Aff. ¶¶ 13–17. According to Colandrea, she was never reprimanded for any of the problems relating to the trip, and Sweeney blamed the parent chaperones for the trip's problems. Id. ¶ 16. After the trip, Sweeney changed the chaperone policy; he did not criticize Colandrea's leadership. Id. ¶ 17.

Finally, Defendants point to a counseling memorandum that Colandrea received on May 8, 2014, for "Insubordination & Insolence" as a third reason for their decision not to rehire her. Defs.' Mem. at 13.[3] Although Defendants provide little information about the events underlying the memorandum, they attach a copy of the memorandum to Sweeney's deposition testimony. Sweeney Dep. Ex. 15A. The memorandum—which Colandrea claims was the first negative letter that she had received in over thirty years of teaching—primarily concerns contacts that Colandrea had with the Board that were outside "the chain of command." Id.[4] In particular, Colandrea

---

[3] Although the May 8, 2014 counseling memorandum is cited in the Memorandum as a reason Colandrea was not hired as Site Coordinator or Activity Leader, it was not mentioned in the affirmation submitted by Defendants' attorney, John Lynch. In fact, Lynch specifically affirms that Colandrea "was not recommended for [the Activity Leader] position based solely upon her actions of June 17, 2014, and the issues related to the Bronx Zoo trip in May, 2014." Lynch Affirm. ¶ 35.

[4] The counseling memorandum also briefly mentions a confrontation between Colandrea and members of the Board during an April 2014 budget workshop. Sweeney Dep. Ex. 15A. But

reached out to individual members of the Board to plead her case for an extension of the retirement incentive. Colandrea Aff. ¶ 19. But Colandrea claims that she reached out to the Board because Sweeney told her that he would not be taking the issue to the Board for a vote, though he later added it to the Board's agenda without informing Colandrea. Id. ¶¶ 18–19. Colandrea then reached out to the Board members to inform them of her daughter's health insurance situation because Sweeney had failed to so on her behalf. Id. ¶ 20. Furthermore, Colandrea states that there is no official chain of command for such communications. Id. ¶ 22.

Colandrea has raised an issue of material fact as to whether each of Defendants' proffered reasons is false or unworthy of belief. "Even under the exacting but-for standard applicable to ADEA claims of age discrimination, 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" Hall v. N. Bellmore Sch. Dist., 55 F. Supp. 3d 286, 300 (E.D.N.Y. 2014) (quoting (Reeves v. Sanderson Plumbing Prods., Inc., 500 U.S. 133, 141 (2000)). In Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107–09 (2d Cir. 2010), the Second Circuit found that the plaintiff created a material issue of fact as to whether age was the but-for cause of her termination under circumstances similar to the facts of this case. In particular, the plaintiff in Gorzynski showed that the defendants relied on an incident that was not properly investigated, and that the defendant did not discipline younger employees who had been involved in similar incidents. Id. Similarly, the Court concludes in this case that Colandrea's prima facie case—when combined with her evidence that Defendants' stated reasons

_____

that confrontation is not mentioned anywhere else in Defendants' submissions.

are false—creates a genuine issue of material fact as to whether Defendants' nondiscriminatory reasons were pretext for discrimination.

### 4. Same-Actor Inference

"The premise underlying the [same-actor] inference is that if the person who fires an employee is the same person that hired him, one cannot logically impute to that person an invidious intent to discriminate against that employee." Carlton, 202 F.3d at 132. Defendants argue that Sweeney and the Board hired Colandrea less than a year before choosing not to rehire her, and therefore they are entitled to an inference that their decision was not motivated by discrimination. Defs.' Mem. at 11.

"[E]ven at the summary judgment stage of litigation, 'the same-actor inference is permissive, not mandatory, and even if the same individuals made both decisions, the Court would not be compelled to give [the defendant] the benefit of the inference.'" Benedith v. Malverne Union Free Sch. Dist., 38 F. Supp. 3d 286, 319 (E.D.N.Y. 2014) (quoting Memnon v. Clifford Chance US, LLP, 667 F. Supp. 2d 334, 351 (S.D.N.Y. 2009)). The fact that Colandrea was hired and then passed over by Sweeney and the Board within one year weighs in favor of applying the same-actor inference. There are, however, two considerations that lead the Court to conclude that the same-actor inference is weak in this case.

First, although the passage of one year is not usually enough to preclude the application of the same-actor inference, see Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (finding that the same-actor inference was entitled to some weight in an ADEA claim where the plaintiff

was hired and fired by the same person within three years),[5] there were significant changes in Colandrea's employment during that year. Most notably, Colandrea's retirement incentive was set to expire. Therefore, the logic of the same-actor inference—that the same person who hired an employee cannot be presumed to have a discriminatory intent when she later fires that same employee—does not apply with its usual force in this case. It is plausible for an employee to be hired for short-term, paid assignments, and then—less than a year later—to be denied those same assignments because of her refusal to retire at the expected time.

Second, it is not entirely clear who was responsible for the decisions to hire and then not rehire Colandrea. In general, the same actor inference "may be applied even when the supervisor at issue . . . is not the only person with input into the hiring and firing decision. The inference 'is applicable so long as one management-level employee played a substantial role in both the hiring and firing of the plaintiff.'" Jones v. Yonkers Pub. Sch., 326 F. Supp. 2d 536, 546 (S.D.N.Y. 2004) (quoting Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001)). In this case, however, Sweeney only reluctantly recommended Colandrea to the Board in 2013 after the Board requested that he do so. Sweeney Dep. at 53:2–53:5. Because Sweeney did not want to hire Colandrea as Site Coordinator in the first place, the same-actor inference is very weak as to Sweeney.

As for the Board itself, it is not clear on the record before the Court who was on the Board when Colandrea was hired, or whether the same members were on the Board when she was not rehired. See Kastel v. Winnetka Bd. of Educ., 946 F. Supp. 1329, 1335 (N.D. Ill. 1996)

---

[5] Other courts in the Second Circuit have found that the "inference remains significant where the time period between hiring and firing is less than two years." Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001) (collecting cases).

("The 'same actor' inference cannot properly be imputed to the organization as a whole.").[6] It is also unclear what role the Board had in deciding not to rehire Colandrea. Given the fact that the window for Colandrea to accept the early retirement incentive closed during the year in question, and the lack of clarity as to who was responsible for the relevant employment actions, the same-actor inference does not foreclose Colandrea's age discrimination claims.

**B. Retaliation**

Retaliation claims under the ADEA and the NYSHRL also proceed according to the McDonnell Douglas burden-shifting framework. Weber v. City of New York, 973 F. Supp. 2d 227, 264 (E.D.N.Y. 2013). Accordingly, a plaintiff must first establish a prima facie case by showing (1) that the plaintiff engaged in statutorily protected activity, (2) that the employer took adverse action against the plaintiff, and (3) that there was a causal connection between the adverse action and the protected activity. Gorzynski, 596 F.3d at 110 (citing Kessler v. Westchester Cty Dep't of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006)). As with a discrimination claim, once a plaintiff establishes a prima facie case of retaliation, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." Weber, 973 F. Supp. 2d at 264 (quoting Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010)). If the employer succeeds at the second stage, then the burden shifts back to the plaintiff to show that retaliation was a but-for cause of the adverse employment action. Id. at 266.

---

[6] In response to Colandrea's first set of interrogatories, Defendants state the names of each Board member in 2014, Dkt. No. 26 ("Interrogatory Response") at 1, but it is not clear who was on the Board when Colandrea was hired as Site Coordinator in 2013.

## 1. Prima Face Case

### a.     Protected Activity

Colandrea claims that she was retaliated against for filing an age discrimination complaint with the EEOC and the NYSDHR. Opp'n at 22. An employee engages in protected activity when she complains about or otherwise opposes conduct that she reasonably believes constitutes forbidden discrimination or retaliation. Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). Complaints of age discrimination are protected activity under the ADEA. 29 U.S.C. § 623(d). According to Colandrea, she filed the complaint on July 9, 2014, and Defendants received notice of her complaint sometime in August 2014. Colandrea Aff. ¶ 33.

### b.     Adverse Employment Action

For retaliation to be actionable, a plaintiff must show that her employer took an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "Crucially, the broadness of this definition means that 'the scope of [the ADEA's] anti-retaliation provision is broader than that of its discriminatory action provision.'" Cerni v. J.P. Morgan Sec. LLC, No. 15-CV-5389, 2016 WL 5805300, at *3 (S.D.N.Y. Sept. 20, 2016) (quoting Patene v. Clark, 508 F.3d 106, 116 (2d Cir. 2007)).

Colandrea alleges that Defendants took multiple adverse employment actions against her in retaliation for the age discrimination complaint. In particular, Colandrea alleges that (1) her applications for paid CROP positions were denied, (2) she was not asked to be a mentor for any new staff members, and (3) she received a counseling memorandum officially reprimanding her

for the incident with McKinnie. Compl. ¶¶ 43, 45, 47. Defendants argue that Colandrea does not make a prima facie case of retaliation because the counseling memorandum does not constitute an adverse employment action, but Defendants fail to even mention the other alleged adverse actions. Defs.' Mem. at 14. Because Defendants' Motion does not address Colandrea's retaliation claims for the denial of paid CROP positions or the opportunity to mentor new staff members, those claims survive the summary judgment motion.

A counseling memorandum, on its own, may constitute an adverse action for the purposes of a retaliation claim. Under the stricter standard used in the discrimination context, a counseling memorandum qualifies as an adverse action only where the plaintiff also alleges that it "created a materially adverse change in her working conditions." Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001); see also Taylor v. N.Y.C. Dep't of Educ., No. 11-CV-3582, 2012 WL 5989874, at *7 (E.D.N.Y. Nov. 30, 2012) ("Negative performance evaluations or ratings may, 'in some circumstances constitute adverse employment action,' but they must trigger negative consequences to the conditions of employment to qualify as such." (quoting Lawrence v. Mehlman, 389 F. App'x 54, 56 (2d Cir. 2010))). In the retaliation context, however, a plaintiff must show only that the counseling memorandum might well have dissuaded a reasonable employee from making a charge of discrimination. "[U]nder this generous standard, a negative performance review can constitute an adverse action for purposes of a retaliation claim." Cerni, 2016 WL 5805300, at *3 (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015)). Here, the counseling memorandum—which refers to Colandrea's conduct as unprofessional, disrespectful, and inexcusable, Sweeney Dep. Ex. 16A—satisfies the adverse action element of Colandrea's retaliation claim.

c.  Causation

"[A] plaintiff must plausibly plead a connection between the [adverse employment] act[ion] and his engagement in protected activity." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015). "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Id. (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013)). "[I]t is well settled that an ADEA plaintiff 'can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.'" Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 581 (S.D.N.Y. 2010) (alteration in original) (quoting Gorzynski, 596 F.3d at 110).

The incident with McKinnie took place on June 17, 2014, but Colandrea did not receive the counseling memorandum until September 9, 2014. Therefore, Colandrea received the counseling memorandum approximately one month after Defendants learned of her discrimination complaint in August 2014, which is sufficiently close in time to support an inference of retaliation. "There is no brightline rule for how long after a plaintiff has engaged in the protected activity that the adverse action must have occurred to benefit from the inference, but the Second Circuit has held that periods as long as five months are not too long." Weber, 973 F. Supp. 2d at 270 (citing Gorzynski, 596 F.3d at 110–11).

In addition to temporal proximity, a plaintiff may also indirectly show causation by providing evidence of "disparate treatment of fellow employees who engaged in similar conduct." Id. (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)). In this case, Colandrea claims that a younger teacher was involved in a similar incident with McKinnie,

but that teacher did not receive a counseling memorandum. Therefore, Colandrea has met her burden of establishing a causal connection between her age discrimination complaint and the counseling memorandum, and she has made a prima facie case that the counseling memorandum was retaliatory.

### 2. Legitimate, Nonretaliatory Reason and Pretext

When a plaintiff makes a prima facie case of retaliation, "a presumption of retaliation arises," and, "under the second step of the burden shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." Mendillo v. Prudential Ins. Co. of Am., 156 F. Supp. 3d 317, 341 (D. Conn. 2016) (quoting Hicks v. Baines, 593 F. 3d 159, 170 (2d Cir. 2010)). Here, Defendants' Memorandum does not specify a legitimate, nonretaliatory reason for the September 9, 2014 counseling memorandum. Defendants' attorney affirmation, however, states that Colandrea received the counseling memorandum because she had an argument with a parent during which she "was screaming at the parent and said the parent was not a good mother, or words to that effect." Lynch Affirm. ¶ 28. The affirmation further states that "the counseling memorandum for the June 17, 2014 incident was not retaliation for Plaintiff's filing of a discrimination complaint with the EEOC or the Division of Human Rights." Id. ¶ 30.

Even if the Court were to find that these statements in the attorney affirmation satisfy Defendants' burden, Colandrea has produced evidence that casts significant doubt on Defendants' rationale for the counseling memorandum. In particular, Colandrea and McKinnie's affidavits both state that Colandrea never called McKinnie a bad parent, or said any other words to that effect. Indeed, McKinnie says that no one from the school ever discussed the incident with

her at all. Therefore, Colandrea has created an issue of material fact as to whether the counseling memorandum was issued in retaliation. Additionally, Defendants do not even address the other retaliatory employment actions—particularly, the denial of paid CROP positions and the opportunity to mentor new staff members—that Colandrea alleges in the Complaint. Defendants motion for summary judgment on Colandrea's retaliation claims must therefore be denied.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 23) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     March 22, 2017
           Albany, New York


Lawrence E. Kahn
U.S. District Judge